Doyle v P.A. Sports Authenticator (2022 NY Slip Op 22301)

Doyle v P.A. Sports Authenticator

2022 NY Slip Op 22301 [76 Misc 3d 38]

Accepted for Miscellaneous Reports Publication

Supreme Court, Appellate Term, Second Department, 2d, 11th 
and 13th Judicial Districts

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, November 23, 2022

[*1]

Robert Doyle, Appellant,
v
P.A. Sports Authenticator, Respondent.

Supreme Court, Appellate Term, Second Department, 2d, 11th and 13th Judicial Districts, September 23, 2022

APPEARANCES OF COUNSEL

Robert Doyle, appellant pro se.
Law Offices of Armen R. Vartian (Armen R. Vartian of counsel) for respondent.

{**76 Misc 3d at 39} OPINION OF THE COURT

Memorandum.

Ordered that so much of the appeal as is from the order entered November 28, 2016, is dismissed, as that order was superseded by the order entered April 20, 2017, made upon reargument; and it is further ordered that the order entered April 20, 2017, insofar as appealed from, is affirmed, without costs.
Plaintiff commenced this action in Civil Court, Kings County, against defendant, a California entity that is in the business of grading baseball cards, claiming that he submitted 15 baseball cards to defendant, which allegedly damaged, switched, and/or misgraded a number of his cards. A copy of defendant's printed "submission form," which lists plaintiff's baseball cards in handwriting and apparently bears plaintiff's signature, is annexed to the complaint.
Defendant moved to dismiss the complaint pursuant to CPLR 3211 (a). In a supporting affidavit, defendant's president stated that, while he had been unable to locate plaintiff's original [*2]submission form, defendant uses a two-page submission form and, based on the page annexed to the complaint, he had been{**76 Misc 3d at 40} able to identify the second page of that version of their form. That second page, which was annexed to defendant's motion papers, constituted, according to defendant's president, the reverse side of the form plaintiff had annexed to the complaint. That page included the statement, in bold, uppercase letters, that the Superior Court of Orange County, California, had exclusive jurisdiction and venue for any disputes "arising from customer's submission of cards" to defendant. Defendant claimed entitlement to dismissal of the instant New York action based on that forum selection clause. In opposition to the motion, plaintiff, who is an attorney, asserted that he had not known of the forum selection clause; that no restrictive terms above his signature had directed his attention to the clause; and that the clause had been printed in a type size which was not compliant with the requirements of CPLR 4544. In reply papers, defendant asserted that the type size complied with CPLR 4544 and that the forum selection clause was enforceable.
In an order entered November 28, 2016, the Civil Court (Reginald A. Boddie, J.) granted defendant's motion to dismiss upon findings that contractual forum selection clauses are prima facie valid and enforceable; that plaintiff had failed to establish that the forum selection clause was unjust or invalid due to fraud or overreaching, or that a trial in California would be gravely difficult; and that the forum selection clause had been sufficiently large and noticeable so that, had plaintiff read the document, he would have discovered it. Plaintiff subsequently moved for leave to reargue. In an order entered April 20, 2017, the Civil Court (Ingrid Joseph, J.) granted reargument but adhered to the prior determination. Plaintiff appeals from the November 28, 2016 order and from so much of the April 20, 2017 order as, upon reargument, adhered to the prior determination. At the outset, we note that so much of the appeal as is from the November 28, 2016 order is dismissed as that order was superseded by the April 20, 2017 order (see Hayon v Levovitz, 34 Misc 3d 158[A], 2012 NY Slip Op 50436[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2012]).
At issue here is whether plaintiff, an attorney, may avoid the consequences of an agreement he signed, which constituted a contract, without any evidence that he was prohibited from reading and reviewing the entire document before agreeing to its terms.
As a general rule, "[a] party that signs a document is conclusively bound by its terms absent a valid excuse for having{**76 Misc 3d at 41} failed to read it" (Guerra v Astoria Generating Co., L.P., 8 AD3d 617, 618 [2004]; see Shklovskiy v Khan, 273 AD2d 371, 372 [2000]; Sofio v Hughes, 162 AD2d 518, 519 [1990]; see also Pimpinello v Swift & Co., 253 NY 159, 162-163 [1930]). "This is so because [i]f the signer could read the instrument, not to have read it was gross negligence; if he could not read it, not to procure it to be read was equally negligent; in either case the writing binds him" (Morris v Snappy Car Rental, 189 AD2d 115, 120 [1993] [internal quotation marks omitted], affd 84 NY2d 21 [1994]; see Pimpinello v Swift & Co., 253 NY at 162-163; Manufacturers & Traders Trust Co. v S.W.U. Assoc., 105 AD2d 1118, 1119 [1984]; see also Sofio v Hughes, 162 AD2d 518 [1990]; Manufacturers & Traders Trust Co. v Commercial Door & Hardware, 51 AD2d 362, 366 [1976]; James Talcott, Inc. v Wilson Hosiery Co., 32 AD2d 524 [1969]).
The subject agreement provided plaintiff with sufficient notice of the forum clause within the terms and conditions section. The print employed in the agreement was both clear and [*3]legible, and plaintiff has not demonstrated that the forum selection clause fails to comply with CPLR 4544. The following language appeared in bold and capitalized letters above plaintiff's signature: "I HAVE READ AND AGREE TO THE PSA [Professional Sports Authenticator] TERMS AND CONDITIONS SET FORTH ON THIS FORM." The two-sided form reveals that it is full of written information from the top of each side to the bottom. Plaintiff acknowledges that he never read the document but rather was given the agreement and instructed to sign the bottom of the agreement, which he did.
We reject plaintiff's contention that the forum clause was invalid because it appeared on the reverse side of the form. The mere fact that the terms and conditions appear on the reverse side of an agreement does not necessarily vitiate a party's responsibility to fully read and review the agreement prior to signing it (cf. Hotel 71 Mezz Lender LLC v Falor, 64 AD3d 430, 430 [2009] [a signer's duty to read and understand that which it signed is not "diminished merely because (the signer) was provided with only a signature page"]; see also Friedman v Fife, 262 AD2d 167, 168 [1999]). A party is bound by terms printed on the reverse side of a contract if it is established that such terms were properly called to the party's attention (see Tri-City Renta-Car & Leasing Corp. v Vaillancourt, 33 AD2d 613, 614 [1969]; Matter of Arthur Philip Export Corp. [Leathertone, Inc.], 275 App Div 102, 105 [1949]). The totality of the circumstances{**76 Misc 3d at 42} determines whether an agreement sufficiently called the signer's attention to the fact that there was information on the reverse side that the parties were agreeing to.
Upon our review of this agreement, we find that the forum selection clause is fully enforceable. The terms on the reverse side of the agreement were sufficiently called to the attention of plaintiff, an attorney (see Morris v Snappy Car Rental, 189 AD2d 115 [1993]; Gillman v Chase Manhattan Bank, 73 NY2d 1, 11 [1988]). There was a clause on the front of the document that referred to terms appearing on the reverse side. The record further establishes that the terms and conditions were prominently set forth on the reverse side of the agreement. In view of the foregoing, we find incredible plaintiff's contention that he was unaware that there was a reverse side to the form until receipt of defendant's motion. Consequently, upon reargument, defendant's motion to dismiss the complaint was properly granted.
Accordingly, the order entered April 20, 2017, insofar as appealed from, is affirmed.
Golia, J. (concurring in part and dissenting in part and voting to dismiss the appeal from the order entered November 28, 2016, and to reverse the order entered April 20, 2017, insofar as appealed from, and, upon reargument, to deny defendant's motion to dismiss the complaint in the following memorandum). It is unclear whether, as defendant contends, the document entitled "submission form" constituted a contract or whether it was more in the nature of a receipt given in connection with a bailment, with a copy handed to plaintiff to establish defendant's possession and control of plaintiff's specific 15 baseball cards (see Chubb & Son v Edelweiss, Inc., 258 AD2d 345 [1999]; Daptardar v Air Park on JFK, Inc., 72 Misc 3d 133[A], 2021 NY Slip Op 50665[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2021]). Disclaimers or limitations of liability printed on the reverse side of bailment receipts are ineffective where the bailor has not been notified of the presence of such language or of the bailee's intention to disclaim or limit its liability (see Brooks v Angelo's Cleaners, 103 AD2d 923 [1984]; Ginsberg v Spring Dry Cleaners, Inc., 2002 NY Slip Op 50084[U] [App Term, 1st Dept 2002]). Assuming that the submission form was merely a receipt with respect to a bailment of the baseball cards, I find that defendant failed to establish its entitlement to dismissal of the complaint, since, in its motion papers, defendant failed to demonstrate that{**76 Misc 3d at 43} plaintiff was aware of the forum selection clause on the reverse side of the submission form.
If I were to interpret the submission form as constituting a contract, I would likewise conclude that defendant failed to establish its entitlement to dismissal of the complaint. Contractual forum selection clauses are
" 'prima facie valid and enforceable unless . . . shown by the challenging party to be unreasonable, unjust, in contravention of public policy, invalid due to fraud or overreaching, or it is shown that a trial in the selected forum would be so gravely difficult that the challenging party would, for all practical purposes, be deprived of its day in court' " (Creative Mobile Tech., LLC v Smart Modular Tech., Inc., 97 AD3d 626, 626 [2012], quoting LSPA Enter., Inc. v Jani-King of N.Y., Inc., 31 AD3d 394, 395 [2006]; see Somerset Fine Home Bldg., Inc. v Simplex Indus., Inc., 185 AD3d 752, 753 [2020]; Lifetime Brands, Inc. v Garden Ridge, L.P., 105 AD3d 1011, 1012 [2013]).
While it is true that the fact that an agreement is "not the product of negotiation does not render it unenforceable" (Molino v Sagamore, 105 AD3d 922, 923 [2013]), mutual assent is an element of binding contracts (see Petkanas v Petkanas, 191 AD3d 708, 710-711 [2021]; 26th St. Partners, LLC v Federation of Orgs. for the N.Y. State Mentally Disabled, Inc., 182 AD3d 543, 543-544 [2020]; 1912 Newbridge Rd., LLC v Liantonio, 172 AD3d 962, 963-964 [2019]) and even in printed form agreements, the terms must be "reasonably communicated" to the party (see Lischinskaya v Carnival Corp., 56 AD3d 116, 120 [2008]). It is undisputed that the forum selection clause at issue only appears on the reverse side of the submission form, with no statement directly above plaintiff's signature directing his attention to terms and conditions on the reverse side (cf. Gillman v Chase Manhattan Bank, 73 NY2d 1, 11 [1988]; Roger's Fence, Inc. v Abele Tractor & Equip. Co., Inc., 26 AD3d 788, 789 [2006]; Morris v Snappy Car Rental, 189 AD2d 115 [1993], affd 84 NY2d 21, 30 [1994]; Greenworld Irrigation Specialists, Inc. v Grossman, 30 Misc 3d 142[A], 2011 NY Slip Op 50320[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2011]; see generally Yellow Book Sales & Distrib. Co., Inc. [a Del. Corp.] v RS Bldrs., Inc., 41 Misc 3d 146[A], 2013 NY Slip Op 52104[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2013]). Rather, the sole reference on the signature page of the submission{**76 Misc 3d at 44} form to the reverse side thereof is to information about shipping fees. Since it appears from the signature page annexed to the complaint that plaintiff paid cash to defendant and did not check a selection for shipping fees, plaintiff, as signer, should not be held to have notice of any other terms and conditions appearing on the reverse side of the form.
Additionally, in his opposition to defendant's motion, plaintiff described the circumstances under which he signed the submission form:
"While at a baseball card show at the Westchester County Center, I submitted several baseball cards for grading to a woman working at defendant's table. This employee placed a pre-printed Submission Form on the table and told me to list my cards thereon and sign on the lower right corner, which I did."
As a result of the circumstances under which he signed the submission form, plaintiff denied having had any awareness of the forum selection clause. Since no conflicting claims were presented in defendant's reply papers as to the circumstances under which plaintiff signed the submission [*4]form, defendant failed to establish that the forum selection clause was enforceable. Consequently, defendant's motion should have been denied.
I do not consider any arguments pertaining to CPLR 4544, since neither party provided admissible evidence pertaining to the type size used in the submission form agreement.
Accordingly, for the reasons stated by the majority, I vote to dismiss the appeal from the November 28, 2016 order. However, I vote to reverse the order entered April 20, 2017, insofar as appealed from, and, upon reargument, to deny defendant's motion to dismiss the complaint.
Weston, J.P., and Toussaint, J., concur; Golia, J., concurs in part and dissents in part in a separate memorandum.